```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
SAURI J. MOREL,                                       :
                                                      :   **MEMORANDUM AND ORDER**
                    Plaintiff,                        :
                                                      :   11-CV-1808 (DLI)(LB)
         -against-                                    :
                                                      :
SPECIAL AGENT DANIEL REED, Immigration and            :
Customs Enforcement ("ICE") Narcotics Smuggling       :
Unit, SPECIAL AGENT JOHN LATTUCA, ICE                 :
Narcotics Smuggling Unit, SPECIAL AGENT               :
MICHAEL FERNANDEZ, ICE Narcotics Smuggling            :
Unit,                                                 :
                                                      :
                    Defendants.                       :
                                                      :
----------------------------------------------------------------- x
                                                      :
SAURI J. MOREL,                                       :
                                                      :
                                                      :
                    Plaintiff,                        :   12-CV-5145 (DLI)(LB)
                                                      :
         -against-                                    :
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :
                    Defendant.                        :
                                                      :
                                                      :
----------------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

On April 11, 2011, Plaintiff Sauri J. Morel (the "Plaintiff"), appearing *pro se*, filed a Complaint against Agents Michael Hernandez,[1] John Lattuca, Daniel Reed and Immigration Customs Enforcement ("ICE") alleging that defendants acted "unlawfully" and "unconstitutionally" in illegally detaining him and creating false incriminating statements which

---

[1] As discussed *infra*, Plaintiff filed an Amended Complaint, which replaced "Michael Hernandez" with the correct Defendant, Michael Fernandez, and Michael Hernandez was subsequently terminated as a party. (*See generally* Amended Compl., Dkt. Entry No. 40.)

led to his prosecution. (*See generally*, Case Dkt. No. 11-CV-1808 Compl. ("Original Complaint"), Dkt. Entry No. 1.) *Pro bono* counsel subsequently appeared on behalf of Plaintiff on the 11-CV-1808 matter, and instead of amending the complaint initially filed, filed a new case on Plaintiff's behalf against the United States of America articulating the same allegations made in the Original Complaint, but with more specificity. Both cases were consolidated on October 25, 2012 and all docket entry citations in this Memorandum and Order refer to the original case docket number, 11-CV-1808. (*See* Order on Mot. to Consolidate Cases in reference to Dkt. Entry No. 35.) Plaintiff then filed a Consolidated Amended Complaint on November 14, 2012 alleging that Defendants Special Agent Daniel Reed, ICE Narcotics Smuggling Unit, Special Agent John Lattuca, ICE Narcotics Smuggling Unit, Special Agent Michael Fernandez, ICE Narcotics Smuggling Unit, and the United States of America (collectively the "Defendants") falsely arrested and maliciously prosecuted Plaintiff in violation of the Fourth Amendment to the United States Constitution and the Federal Torts Claims Act, 28 U.S.C. § 1346(b). (*See generally* Consolidated Amended Compl., Dkt. Entry No. 40.) Plaintiff's constitutional violation claims are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See id.*)

Defendants now move for summary judgment and dismissal of Plaintiff's Consolidated Amended Complaint on the following grounds: (1) there was probable cause for Plaintiff's arrests; (2) there was probable cause for Plaintiff's prosecution and Plaintiff cannot show the absence of probable cause; and (3) the individual Defendants are entitled to qualified immunity. (*See generally* Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Dkt. Entry No. 86.) Plaintiff opposes alleging genuine issues of material fact require a trial on Plaintiff's allegations. (*See generally* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J.

("Pl.'s Mem."), Dkt. Entry No 87.) For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[2]

The following facts are undisputed. On June 21, 2009, Plaintiff and his associate arrived at John F. Kennedy International Airport ("JFK Airport") located in Queens, New York, and picked up a cargo container of breadfruit. (Defs.' Local Rule 56.1 Stmt. of Facts ("Defs.' 56.1 Stmt.") ¶ 15, Dkt. Entry No. 84; Pl.'s Local Rule 56.1 Stmt. of Facts ("Pl.'s 56.1 Stmt.") ¶ 36, Dkt. Entry No. 90.) Earlier in the day, United States Customs and Border Protection ("CBP") Officers discovered cocaine hidden inside the breadfruit shipment. (Defs.' 56.1 Stmt. ¶¶ 2-3; Pl.'s 56.1 Stmt. ¶ 39.) The CBP Officers then alerted Special Agent Andrew Goldstein from the ICE Internal Conspiracy Group who supervised the removal of all the cocaine from the breadfruit shipment. (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Stmt. ¶ 49.) Plaintiff and his associate, while loading the sacks of breadfruit into Plaintiff's vehicle, were surrounded by ICE agents and placed under arrest. (Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 60.)

Plaintiff was questioned at JFK Airport by Agent Goldstein and another ICE agent, Agent Leung. (Defs.' 56.1 Stmt. ¶¶ 20, 23; Pl.'s 56.1 Stmt. ¶ 61.) Later, Defendants Lattuca and Reed took over the investigation into the breadfruit shipment. (Defs.' 56.1 Stmt. ¶¶ 40-43; Pl.'s 56.1 Stmt. ¶ 73.) As a result, Defendants Reed and Lattuca held Plaintiff in custody, although they released Plaintiff's associate and other individuals arrested with regard to a separate breadfruit shipment containing cocaine that had also arrived that day. (Defs.' 56.1 Stmt. ¶¶ 59-63; Pl.'s 56.1 Stmt. ¶¶ 75-76.) Early the next morning, Plaintiff was released. (Defs.' 56.1 Stmt. ¶ 76; Pl.'s 56.1 Stmt. ¶ 107.)

---

[2] This opinion is drafted for the benefit of the parties whose familiarity with the facts and circumstances of this case is assumed. Only those facts necessary for the determination of the summary judgment motion are referred to herein.

On June 23, 2009, Defendant Reed directed Plaintiff to return to ICE's offices, which he did, voluntarily and without counsel. (Defs.' 56.1 Stmt. ¶ 86-87, 90; Pl.'s 56.1 Stmt. ¶¶ 113-14.) Defendants Reed and Fernandez, who was covering for Defendant Lattuca, questioned Plaintiff again about the June 21, 2009 events. (Defs.' 56.1 Stmt. ¶ 91; Pl.'s 56.1 Stmt. ¶¶ 115-16.) During this interview, Plaintiff denied that he knew he was transporting drugs. (Defs.' 56.1 Stmt. ¶ 93; Pl.'s 56.1 Stmt. ¶ 117.) Plaintiff then was rearrested. (Defs.' 56.1 Stmt. ¶ 98; Pl.'s 56.1 Stmt. ¶ 120.) Plaintiff was indicted by a Grand Jury in the Eastern District of New York for knowingly and intentionally conspiring to import cocaine into the United States, but was acquitted after trial. (Defs.' 56.1 Stmt. ¶¶ 100-03; Pl.'s 56.1 Stmt. ¶¶ 125, 130, 150.)

That is the extent of Defendants' and Plaintiff's agreement on the facts. Plaintiff's version of the story is as follows. Plaintiff, after responding to an ad in a newspaper, was hired by a company called "Green Market" to pick up fruit shipments from JFK Airport. (Pl.'s 56.1 Stmt. ¶¶ 10-12, 19-20.) On June 21, 2009, Plaintiff was picking up only his second shipment of breadfruit for Green Market when he was arrested, as described above. (*Id.* ¶ 63.) Plaintiff cooperated with Agents Goldstein and Leung, telling them that he did not know drugs were in the shipment, answering all of their questions, and giving the agents information about his employers and access to his employer-provided cell phone. (*Id.* ¶¶ 63-68.) Following the interviews, Agents Goldstein and Leung contacted the United States Attorney's Office ("USAO") for the Eastern District of New York. (*Id.* ¶ 70.) The USAO declined prosecution because, without incriminating statements by any of the arrestees, including Plaintiff, there was insufficient evidence to hold them. (*Id.* ¶ 71.) Defendants Reed and Lattuca, who took over the investigation at this point, then rearrested Plaintiff by placing him in handcuffs and detained him for at least six more hours. (*Id.* ¶ 76.) Defendants Reed and Lattuca did not have any additional

information about Plaintiff or his alleged involvement with the cocaine shipment, nor did they inform Plaintiff that prosecution had been declined by a federal prosecutor. (*Id.* ¶¶ 77-78.) Defendants Reed and Lattuca then called the USAO again and falsely informed them that Plaintiff implicated himself in statements to Defendants. (*Id.* ¶ 100.) However, no statement was ever recorded or transcribed. (*Id.* ¶¶ 102-03.) The USAO then decided to defer, instead of decline, prosecution. (*Id.* ¶ 104.) Plaintiff then was released. (*Id.* ¶ 105.)

As discussed above, Plaintiff returned to the ICE offices on June 23, 2009. After another conversation with Plaintiff, Defendants Fernandez and Lattuca encouraged Defendant Reed to ask the USAO to initiate prosecution against Plaintiff. (*Id.* ¶ 121.) Defendant Hernandez instructed Defendant Reed to arrest Plaintiff. (*Id.* ¶ 120.) On June 24, 2009, Defendant Reed repeated his false statements in a sworn criminal complaint and testified before a grand jury that Plaintiff admitted to knowing about the cocaine in the breadfruit, even though that was not true. (*Id.* ¶¶ 123, 128.) Plaintiff then was indicted, tried, and acquitted.

Defendants concede, for purposes of this motion only, that they fabricated Plaintiff's incriminating statements; however, their version of events differs from Plaintiff's as follows. (Defs.' Mem. at 12 n.3.) On June 21, 2009, after Defendants Reed and Lattuca took over the examination of Plaintiff, Defendants noticed Plaintiff acting suspiciously and providing vague answers to questions. (Defs.' 56.1 Stmt. ¶ 56.) However, Defendants realized that Plaintiff was the only individual providing information, and, therefore, Defendant Lattuca decided to release the other individuals arrested that night. (*Id.* ¶ 59.) The USAO concurred with his decision. (*Id.* ¶ 63.) During the subsequent interview with Defendant Lattuca, Plaintiff admitted that he knew he was transporting drugs. (*Id.* ¶¶ 67-69.) Defendants Reed and Lattuca then secured a verbal agreement with Plaintiff and the USAO to use Plaintiff as a cooperator in exchange for the

USAO's deferral of his prosecution. (*Id.* ¶¶ 70, 75.) Plaintiff then was released from custody. (*Id.* ¶ 76.)

On June 22 and 23, 2009, Defendants Reed and Lattuca attempted to contact Plaintiff to no avail. (*Id.* ¶¶ 81-89.) When Plaintiff returned to ICE offices on June 23, he denied that he knew he was transporting drugs. (*Id.* ¶ 93.) Defendants Reed and Fernandez then determined that Plaintiff could not assist them as a cooperator in the investigation because he was not being honest with them. (*Id.* ¶ 96.) Defendant Reed then secured the permission of the USAO to arrest and prosecute Plaintiff. (*Id.* ¶ 97.)

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.

1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## II. Genuine Issues of Material Fact Require a Trial on Plaintiff's False Arrest Claims

Defendants contend that they are entitled to summary judgment on the false arrest claims because: (1) Defendant Fernandez had no involvement in the June 21, 2009 arrest; (2) Defendants Reed and Lattuca had probable cause sufficient to make the June 21, 2009 arrest because of the day's events; and (3) Defendants had probable cause sufficient to make the June 23, 2009 arrest because of the June 21, 2009 events. (*See* Defs.' Mem. at 7-8.) Plaintiff objects, arguing that a jury could find that Defendants lacked probable cause for the arrests because the USAO declined to prosecute Plaintiff and that a reasonable juror could find there was insufficient evidence to arrest Plaintiff both times. (Pl.'s Mem. 11-15.) The Court grants in part, and denies in part, summary judgment as to Plaintiff's false arrest claims.

The elements of a false arrest claim are: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged [by probable cause]." *Weyent v. Okst*, 101 F.3d. 845, 853 (2d Cir. 1996) (internal quotations omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* at 852. Probable cause for an arrest may be determined on summary judgment where "there is no dispute as to the pertinent events and the knowledge of the officers." *Id.*

7

An officer that has fabricated evidence reasonably and readily could be found by a jury to lack the belief that the person arrested has committed a crime. *See, e.g., Richardson v. City of N.Y.*, 2006 WL 2792768, *3-4 (E.D.N.Y. Sep. 27, 2006). Additionally, where a prosecutor has declined prosecution and the plaintiff subsequently is arrested on the same charge, a reasonable juror could find that the officers lacked probable cause for the second arrest. *See, e.g., Gordon v. City of N.Y.,* 2012 WL 1068023, *6-7 (E.D.N.Y. Mar. 29, 2012). Furthermore, "evidence of a subsequent . . . acquittal [is] admissible to refute . . . justification" for the arrest. *Weyent,* 101 F.3d at 852.

As an initial matter, summary judgment is granted for Defendant Fernandez only with respect to claims relating to the June 21, 2009 arrests as Defendant Fernandez was not involved in the Plaintiff's case until June 23, 2009. However, there are material issues of fact that require a trial as to Plaintiff's remaining false arrest claims. Although Defendants initially may have had probable cause to arrest Plaintiff on June 21, 2009, there is substantial dispute as to the pertinent events and knowledge of the officers that casts serious doubt as to whether Defendants had probable cause to make the second June 21, 2009 and June 23, 2009 arrests.

First, if Defendants fabricated Plaintiff's statements as Plaintiff claims, then a reasonable jury easily could find that the Defendants did not believe Plaintiff knew the breadfruit contained cocaine and, therefore, lacked probable cause to re-arrest him. Additionally, once the USAO declined to prosecute Plaintiff, as Plaintiff alleges, then a reasonable juror also could find that the officers lacked probable cause to arrest Plaintiff for the drug crime the second time on June 21, 2009 and then again on June 23, 2009. Finally, the fact that Plaintiff later was acquitted of the charges further weakens Defendants' argument, as Defendants have not made a sufficient

showing in this motion to overcome the acquittal. For these reasons, Defendants' motion for summary judgment as to the remaining false arrest claims is denied.

## III. Genuine Issues of Material Fact Require a Trial on Plaintiff's Malicious Prosecution Claims

Defendants argue that they are entitled to summary judgment on the malicious prosecution claims because: (1) Defendants Lattuca and Fernandez did not initiate the prosecution; (2) Plaintiff cannot show an absence of probable cause for the prosecution because the grand jury indictment created a presumption of probable cause and there was probable cause to prosecute Plaintiff based on the June 21, 2009 events; and (3) Plaintiff cannot show actual malice on the part of Defendants. (*See* Defs.' Mem. at 8.) Plaintiff opposes arguing that: (1) evidence that Defendants fabricated a confession establishes a malicious prosecution claim; (2) Defendants Lattuca and Reed initiated the prosecution by submitting false information to the prosecutor; (3) Defendants lacked probable cause to believe that the prosecution could succeed; and (4) a reasonable juror could find that Defendants acted with the requisite malice. (Pl.'s Mem. at 16-24.) Defendants' interpretation of the law is misinformed and, as such, the Court denies summary judgment for Defendants.

To succeed on a malicious prosecution claim, a plaintiff must show: (1) the defendants' initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause to believe the prosecution could succeed; and (4) malice as a motivation for defendants' actions. *See Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003).[3] In the context of malicious prosecution, probable cause is deemed to be "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* An indictment creates a presumption of probable cause, but that

---
[3] This analysis is the appropriate legal standard for both Plaintiff's *Bivens* claim and Federal Tort Claims Act claim.

presumption can be overcome by evidence that officers misrepresented or falsified evidence. *See id.* "[O]n a malicious prosecution claim, if it can be proved that a law-enforcement officer fabricated material evidence against a suspect and forwarded it to prosecutors, causing the suspect to be deprived of his liberty[,] . . . then not only is the presumption of probable cause overcome, but the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator." *Richardson*, 2006 WL 2792768 at * 7 (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1996)). "At the summary judgment stage, the element of malice usually turns on the probable cause inquiry, since the 'lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.'" *Id.* (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1996)).

As an initial matter, Defendants argue that Defendants Lattuca and Fernandez should be granted summary judgment as to the malicious prosecution claims because they did not initiate the prosecution. However, a law enforcement officer can initiate a prosecution by forwarding a false confession to prosecutors, and, as Defendants were involved in the interviews, a reasonable juror could find that all Defendants participated in fabricating Plaintiff's false confession and forwarding it to Prosecutors. *See Ricciuti*, 124 F.3d at 130.

Secondly, there clearly are issues of material fact that require a trial on Plaintiff's malicious prosecution claims. Defendants rely on the grand jury charge and the events of June 21, 2009 to claim there was probable cause to prosecute Plaintiff. However, if an officer falsified evidence and forwarded it to prosecutors, as Defendants admit doing for purposes of this motion, then the presumption of probable cause is lost. Additionally, a lack of probable cause for the prosecution is a sufficient showing of malice to withstand summary judgment.

Defendants improperly rely on *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506-08 (2012), to argue that Defendant Reed's false testimony is insufficient to overcome the presumption of probable cause created by the June 21, 2009 events because a grand jury witness has absolute immunity from any constitutional claim based on the witness' testimony. (Defs.' Mem. at 20-21.) However, Plaintiff correctly maintains that his claim is not that Defendant Reed's grand jury testimony caused the malicious prosecution, but that by submission of false evidence to the prosecutor, all Defendants, including Defendant Reed, caused the malicious prosecution. (Pl.'s Mem. at 20.) Therefore, the Supreme Court's decision in *Rehberg* is inapplicable to the present case and Defendants' motion for summary judgment is denied as to the malicious prosecution claims. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506-08 (2012); *see, e.g., Del Col v. Rice*, 2012 WL 6589839, at *14 n.19 (E.D.N.Y. Dec. 18, 2012) ("[C]ourts have allowed malicious prosecution claims to proceed, where malicious prosecution claims are based on more than false grand jury testimony.")

## IV.     Defendants Are Not Entitled to Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a malicious prosecution claim, which requires showing a lack of probable cause, it is appropriate to grant summary judgment on the basis of qualified immunity to law enforcement officers where "either (a) it was objectively reasonable for the officer[s] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Walker v.*

*Mendoza*, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 1993) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)).

For the reasons discussed above, there are material issues of fact concerning whether it was objectively reasonable for Defendants to believe that probable cause existed and whether officers of reasonable competence could agree probable cause existed to arrest and prosecute Plaintiff. Therefore, summary judgment for Defendants on the basis of qualified immunity is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted only with regard to the June 21, 2009 false arrest claim against Defendant Fernandez, but denied as to all other remaining claims.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2015

  _____/s/_____
                    DORA L. IRIZARRY
                  United States District Judge