UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
SAURI J. MOREL,

                              Plaintiff,

                              -against-

SPECIAL AGENT DANIEL REED, Immigration and Customs Enforcement ("ICE") Narcotics Smuggling Unit, SPECIAL AGENT JOHN LATTUCA, ICE Narcotics Smuggling Unit, SPECIAL AGENT MICHAEL FERNANDEZ, ICE Narcotics Smuggling Unit,

                              Defendants.

**MEMORANDUM AND ORDER**

11-CV-1808 (DLI)(LB)

------------------------------------------------------------------ x

SAURI J. MOREL,

                              Plaintiff,

                              -against-

UNITED STATES OF AMERICA,

                              Defendant.

12-CV-5145 (DLI)(LB)

------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

On March 31 2015, the Court denied Defendants' motion for summary judgment, finding numerous genuine issues of material facts, and only granted it in regard to the June 21, 2009 false arrest claim against Defendant Fernandez (the "Decision").[1] (*See* 3/31/15 Mem. & Or., Dkt. Entry No. 108.) On April 15, 2015, Defendants moved for reconsideration of the Decision

---

[1] This Order is written for the parties and familiarity with the underlying facts and circumstances of this action is assumed. For a full discussion of this action, *see* the Decision. The Court incorporates all party-name abbreviations and designations from the Decision in this Order.

1

(*see* Defs.' Mem. in Supp. of Mot. for Recons. ("Defs.' Mot."), Dkt. Entry No. 110); which Plaintiff opposed. (*see* Pl.'s Mem. in Opp'n to Mot. for Recons. ("Pl.s' Opp'n"), Dkt. Entry No. 111). For the reasons set forth below, Defendants' motion for reconsideration is denied in its entirety.

## DISCUSSION

**I.  Legal Standard**

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport, Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 369 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion. *Id.*; *United States v. Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. *Gross*, 2002 WL 32096592 at *4.

Defendants contend that the Court overlooked controlling law and undisputed facts when denying summary judgment for Defendants on Plaintiff's false arrest and malicious prosecution claims. (*See generally* Defs.' Mot.) The Court has reviewed the authority and facts that Defendants submitted in support of their motion for reconsideration and finds Defendants' motion to be without merit. Moreover, to a great extent, Defendants simply repackaged and

relitigated many of the same arguments and issues already considered by the Court in rendering its Decision in the first instance.

**II.     The Court Did Not Overlook Matters of Law and Fact in Denying Summary Judgment on Plaintiff's False Arrest Claims**

Defendants argue that the Court should reconsider its Decision on the false arrest claims because the Court: 1) misinterpreted controlling law by relying improperly on Plaintiff's acquittal; 2) relied on the subjective beliefs of the Defendants and prosecutor when deciding that probable cause for the arrests did not exist as a matter of law; and 3) overlooked factual issues that would alter its Decision.  The Court has reviewed Defendants' arguments and its Decision, and denies Defendants' motion for reconsideration on the false arrest claims.

Defendants, relying heavily on the Second Circuit's decision in *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) contend that the Court misinterpreted controlling case law when evaluating whether Defendants had probable cause for Plaintiff's arrest and the effect of Plaintiff's later acquittal on the probable cause determination.  It is Defendants who misinterpret this Court's ruling.  Contrary to Defendants' contention, the Court did not hold that Defendants lacked probable cause to arrest Plaintiff because Plaintiff was later acquitted, but merely stated that the subsequent acquittal is admissible as evidence to refute justification (*i.e.,* probable cause) for the arrest.  (*See* Decision at 8.)  Additionally, the *Weyant* opinion does not restrict the introduction of acquittal evidence only to cases where a conviction has been overturned on appeal.  Indeed, Defendants in their brief at p. 6 undercut their own argument by citing to dicta quoted by the *Weyant* court from *Broughton v. State*, 37 N.Y.2d 451, 458 (1975), which states, in pertinent part, that ". . . evidence of a subsequent *dismissal*, *acquittal*, **or** *reversal on appeal* would also be admissible to refute the affirmative defense of justification" (emphasis added). Many courts in the Second Circuit have interpreted *Weyant* broadly, allowing admission of an

acquittal to inform the probable cause analysis in false arrest claims, regardless of whether a there was an original conviction or not. *See, Weyant,* 101 F.3d at 852; *see e.g., Taylor v. City of New York*, 269 F. Supp. 2d 68, 74 (E.D.N.Y. 2003), *Rarick v. DeFrancesco*, 94 F. Supp. 2d 279, 289 n.10 (N.D.N.Y. 2000). Therefore, the Court properly held that the acquittal is admissible evidence that would allow a reasonable jury to conclude that Defendants did not have probable cause to arrest Plaintiff.

Next, Defendants again argue that, because they initially had probable cause to arrest Plaintiff on June 21, 2009, probable cause existed to detain Plaintiff the entire night of June 21, 2009 and to arrest him again on June 23, 2009. (*See* Defs.' Mot. at 5.) This is the identical argument Defendants made in their original papers, which the Court rejected. The Court held that the issue of probable cause, while not disputed as to the first arrest, is disputed as to Plaintiff's detention after prosecution was declined. (*See* Decision at 7-8.) Admissible evidence supports that genuine issues of material fact exist as to whether there was probable cause to arrest defendant after prosecution was declined. This Court also considered the *Weyant* opinion in so concluding. In *Weyant*, the Second Circuit specifically held that "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." Plaintiff and Defendants disagree strongly as to what happened from June 21-23, 2009, and those facts relate directly to whether or not the officers had probable cause to detain Plaintiff on June 21, 2009 and June 23, 2009. This analysis does not rely on the Defendants' or the prosecutor's subjective beliefs, as Defendants maintain, but on the fact that two very different versions of the events have been presented to the Court. Plaintiff's version, which the Court must credit as the non-moving party, would allow a jury to conclude that Defendants lacked

4

probable cause to continue to detain Plaintiff on the night of June 21, 2009 and then again on June 23, 2009.

Lastly, Defendants contend that the Court overlooked facts that would alter its Decision on the false arrest claims. First, Defendants maintain that the Court misconstrued facts when it declared that a reasonable jury could find that Defendants Reed and Lattuca "re-arrested" and handcuffed Plaintiff on June 21, 2009 and the prosecution declined to prosecute Plaintiff due to insufficient evidence. (Defs.' Mot. at 11.) Whether or not Plaintiff was in handcuffs and remained in them or was re-handcuffed after prosecution was declined, is of no moment. An initial lawful seizure may become unlawful regardless of whether there is a new seizure or an earlier seizure simply continues. *See, e.g., Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (noting in the case of traffic stops that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed")*; Gordon v. City of New York*, 2012 WL 1068023, at *5-7 (E.D.N.Y. Mar. 20, 2012) (holding false arrest claim may proceed where plaintiff was re-arrested after prosecution was declined).

Second, Defendants assert the Court relied on inadmissible evidence when determining that there was sufficient evidence to establish that the federal prosecutor declined prosecution and ordered Plaintiff's release. (Defs.' Mot. 13.) The Court reviewed all the evidence submitted, which included deposition transcripts, testimony at a suppression hearing on Plaintiff's criminal case, an ICE Significant Incident Report, an ICE record from the SEACATS system, and a DEA disposition report, and again finds the evidence admissible and relevant to Plaintiff's false arrest claims.[2] Moreover, Defendants' argument that there is no evidence that the prosecutor ordered Plaintiff released, but instead ordered Defendants to continue

---

[2] Defendant also argues that the only admissible evidence that prosecution was declined is Agent Goldstein's testimony that prosecution was 'tentatively" declined. (Defs.' Mot. at 14.) As the Court finds the other evidence admissible, it need not address this meritless argument in any detail.

5

investigating Plaintiff is irrelevant to the Court's summary judgment decision. Evidence of whether the prosecutor ordered Plaintiff's release or ordered Defendants to keep investigating Plaintiff will be for the jury to evaluate at trial, as will evidence about the declined prosecution. *See Gordon*, 2012 WL 1068023 at *5-7. Because there are genuine issues of material fact as to whether or not probable cause existed for Plaintiff's arrest, Defendants are not entitled to a finding of qualified immunity as discussed in great detail in the Decision. (Decision at 11-12.) For the reasons set forth above, Defendants' motion for reconsideration on the false arrest claims is denied.

**III. The Court Did Not Overlook Matters of Law and Fact in Denying Summary Judgment on Plaintiff's Malicious Prosecution Claims**

Defendants ask the Court to reconsider its ruling on the malicious prosecution claims for two reasons: 1) that the Court overlooked controlling law when examining whether probable cause existed for the prosecution; and 2) that the Court overlooked uncontested evidence that Defendant Fernandez was not involved in the alleged fabrication of Plaintiff's confession. These contentions are meritless.

Defendants argue that the Court overlooked controlling law when determining that the Plaintiff's acquittal overcame the presumption of probable cause for the prosecution that his criminal indictment created, and that it was irrelevant whether Defendants possessed probable cause for the indictment independent of the fabricated confession. (Defs. Mot. at 20.) The case law, cited to in the Decision and reiterated here, is incredibly clear. When law enforcement officers fabricate evidence, not only is the presumption of probable cause created by the indictment overcome, "but the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator." *Richardson v. City of New York*, 2006 WL 2792768, at *7 (E.D.N.Y. Sept. 27, 2007) (citing *Ricciuti v. New York City Transit Auth.*, 124 F. 3d 123, 130

6

(2d Cir. 1996)). Therefore, the Court properly denied summary judgment for Defendants on the malicious prosecution claims, regardless of whether probable cause to prosecute Plaintiff existed independent of the fabricated confessions.

Lastly, Defendants contend that the Court should reconsider its Decision to deny Defendant Fernandez summary judgment on the malicious prosecution claim because Defendant Fernandez was not involved in manufacturing the false confessions. (Defs. Mot. at 21-23.) In *Ricciuti*, facing a very similar set of facts and relying on plaintiff's version of the events, the Second Circuit held that "a jury could find that [the officer] knowingly took part . . . in the distribution of a confession he knew to be false, and that . . . . [a] jury . . . might rationally infer that [the defendants] were jointly involved in a common scheme—a conspiracy to ensure that plaintiffs were detained on false charges." *Ricciuti*, 124 F.3d at 131 (overturning the granting of summary judgment for defendant police officers on malicious prosecution claims). Taking Plaintiff's evidence as true, as the Court must at this stage, that Defendant Fernandez and Defendant Reed interrogated Plaintiff together on June 23, 2009 and that Defendant Fernandez directed Defendant Reed to arrest Plaintiff that same day, a jury could find that Defendant Fernandez knowingly took part in the distribution of a confession he knew to be false. (*See* Pl.'s 56.1 Stmt. ¶¶ 116, 120-121.) Therefore, Defendants' motion for reconsideration as to the malicious prosecution claim against Defendant Fernandez is also denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion for reconsideration is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      June 16, 2015

                                                  /s/
                                    DORA L. IRIZARRY
                                United States District Judge